IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

UNITED STATES OF AMERICA,

VS.                                            CRIMINAL ACTION NO. 4:06CR124-P-B

CHARLES BARRETT MERRILL,
WILBUR TYRONE PEER,
ERWIN DAVID RABHAN,
JIMMY WINEMILLER, and
WILLIAM MICHAEL WINEMILLER,                                              DEFENDANTS.

## MEMORANDUM OPINION

These matters come before the court upon Defendant Erwin David Rabhan's Motion to Dismiss Counts 2, 3 & 4 for Lack of Venue [38-1], Motion to Dismiss or in the Alternative Consolidate Multiplicitous Counts [39-1], Motion to Sever Count 11 [41-1] and Defendant Charles Barrett Merrill's Motion to Dismiss Count 4 for Lack of Venue [45-1]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

**A. Charges**

The indictment in this matter charges that from January 1999 to March 2000, Charles Barrett Merrill, Wilbur Tyrone Peer, Erwin David Rabhan, Jimmy Winemiller, and William Michael Winemiller conspired to, and did in various ways, violate 18 U.S.C. § 1014 which states in pertinent part:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the ... Rural Development Administration or ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement,

> commitment, or loan ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Essentially, Rabhan, a resident of Georgia and president of Ehrlich Fish Farms, Inc. located in Georgia, set out to purchase a 1,560 acre catfish farm near Inverness, Mississippi owned by Straight Creek Farms, Inc., an Arkansas corporation, the president of which was Jimmy Winemiller. Rabhan and Jimmy Winemiller agreed to pursue financing through the Business and Industry Guaranteed Loan Program, a U.S. Government program that under certain circumstances will guarantee up to ninety percent of the value of a loan. Based on the defendants' representations, Gulf Coast Bank and Trust Company ("GCBT"), a bank in Louisiana, agreed to make the loan.

In count 1 of the indictment, the Government charges that all five defendants conspired to knowingly make false statements or reports and/or to overvalue property for the purpose of influencing the action of the Rural Development Administration of the U.S.D.A. in guaranteeing the loan and GCBT to make the loan all in violation of § 1014.

In the conspiracy count, the Government sets forth the objectives of the conspiracy and the overt acts in furtherance of the conspiracy. All of the alleged overt acts are repeated in further separate counts against the defendants.

Charles Barrett Merrill

Charles Barrett Merrill is charged with counts 1 and 4. Count 4 alleges that he and Rabhan aided and abetted each other in violating § 1014 by forging a contract and an October 27, 2000 letter to Ed Bell fraudulently representing that Dal Durden had signed a contract to purchase Rabhan's 920 acres of Ehrlich Fish Farms, Inc. that would be used as security for the loan when in fact the Rabhan with Merrill's assistance had already sold the property in July 1999.

2

Erwin David Rabhan

      Erwin David Rabhan is charged with counts 1, 2, 3, 4, 8, and 11.

      Count 2 alleges that on or about March 15, 2000, Rabhan knowingly violated § 1014 by forging an inventory with the name of appraiser Paul Barrett, stating that Ehrlich Fish Farms owned $2,466,800 worth of catfish located in 25 ponds, when in fact the ponds did not exist.

      Count 3 alleges that Rabhan violated § 1014 on November 15, 2000 by signing a Deed to Secure Debt, stating that he had "good and marketable fee simple title" to a parcel of land described and attached to the Deed to Secure Debt, when in fact he had sold the property in July 1999.

      As discussed above with regard to Merrill, count 4 alleges that Rabhan, with the assistance of Merrill, forged a contract and a letter fraudulently representing that he still owned 920 acres of Ehrlich Fish Farms, Inc. when he had already sold most of it in July 1999.

      Count 8 alleges that Rabhan and William Michael Winemiller violated § 1014 in October 2000 when Rabhan directed Kent Toler to submit a fraudulent invoice to Gulf Coast Bank and Trust for $18,000 for seining. Winemiller provided twelve ponds and their corresponding names for Toler to submit on the fraudulent invoice, but Toler did not seine the ponds described in the invoice. Gulf Coast Bank and Trust then paid to Kent Toler Seining, Inc., $18,000. These funds were paid with cashier's checks out of the government guaranteed loaned funds. Toler then paid to William Michael Winemiller $10,100 out of the funds and kept the remainder. Toler wrote two checks rather than one because William Michael Winemiller told him checks less than $10,000 are more difficult to trace for tax purposes.

      Count 11 alleges that Jimmy Winemiller made material false statements and willfully overvalued land, property, and security in violation of § 1014 by paying to Wilbur Tyrone Peer a

3

$50,000 bribe to encourage Peer, as Associate Administrator at the USDA, Rural Business Cooperative Services, to approve the $10,000,000 loan guarantee sought by Rabhan as President of Ehrlich Fish Farms, Inc.

Jimmy Winemiller

Jimmy Winemiller is charged in counts 1, 7, and 11.

Count 7 alleges that he violated § 1014 in October 2000 when he had his wife, Becky Winemiller, write a $5,000 check to her son William Michael Winemiller to bribe Paul Barrett. William Michael Winemiller then cashed the check and paid Barrett in cash. Barrett did an inventory of the catfish on Straight Creek Farms and the bribe was paid so Barrett would fraudulently inflate the number and weight of the fish.

As discussed above regarding Rabhan count 11 alleges that Jimmy Winemiller paid Wilbur Tyrone Peer a $50,000 bribe.

William Michael Winemiller

William Michael Winemiller is charged with counts 1, 5, 6, 8, 9, and 10.

Count 5 alleges that William Michael Winemiller violated § 1014 by providing to Dwight Brown fraudulent weights of catfish per pond owned by Strait Creek Farms to make Brown's appraisals provided to Gulf Coast Bank and Trust and the Government appear as if Straight Creek Farms owned far more catfish than it actually did.

Count 6 alleges William Michael Winemiller violated § 1014 by providing to Dwight Brown fraudulent numbers to suggest Straight Creek Farms had catfish in the "Choctaw" ponds, when in fact the catfish in the "Choctaw" ponds belonged to Kent Toler. Winemiller did this to make Brown's appraisals appear as if Straight Creek Farms owned more catfish than it actually did.

4

Count 8 alleges Rabhan and William Michael Winemiller violated § 1014 in October 2000 when Rabhan directed Kent Toler to submit a fraudulent invoice to Gulf Coast Bank and Trust for $18,000 for seining. William Michael Winemiller provided twelve ponds and their corresponding names for Toler to submit on the fraudulent invoice, but Toler did not seine the ponds described in the invoice. Gulf Coast Bank and Trust then paid to Kent Toler Seining, Inc., $18,000. These funds were paid with cashier's checks out of the government guaranteed loaned funds. Toler then paid to William Michael Winemiller $10,100 out of the funds and kept the remainder. Toler wrote two checks rather than one because William Michael Winemiller told him checks less than $10,000 are more difficult to trace for tax purposes.

Count 9 alleges William Michael Winemiller violated § 1014 on March 3, 2000 when , after learning which two ponds Straight Creek Farms the government planned to seine to determine whether the numbers were sufficient to guarantee the loan, he directed that catfish from numerous other ponds be seined and placed into the two ponds the government intended to seine approximately two days later. William Michael Winemiller did this to make it appear as if Straight Creek Farms owned more catfish than it actually did.

Count 10 alleges William Michael Winemiller violated § 1014 in August 1999 when he told Dwight Brown, an appraiser doing an appraisal on the equipment owned and being transferred from Straight Creek Farms, Inc. to Ehrlich Fish Farms, Inc., that Straight Creek Farms had 278 aerators and 42 PTO driven aerators. These numbers were fraudulent, and William Michael Winemiller inflated the numbers to make it appear that Straight Creek Farms owned more equipment than it actually did. This equipment was to be used as part of the security for the loan after Rabhan came into possession of it.

Wilbur Tyrone Peer

William Tyrone Peer is charged with counts 1 and 11. As discussed above regarding Rabhan and Jimmy Winemiller, count 11 alleges that Jimmy Winemiller made material false statements and willfully overvalued land, property, and security in violation of § 1014 by paying to Wilbur Tyrone Peer a $50,000 bribe to encourage Peer, as Associate Administrator at the USDA, Rural Business Cooperative Services, to approve the $10,000,000 loan guarantee sought by Rabhan as President of Ehrlich Fish Farms, Inc.

**B. Motions**

Defendant Rabhan has filed three motions. The first is to dismiss counts 2, 3 & 4 for lack of venue arguing that these are substantive acts instead of the overt acts of the conspiracy charge and, since they occurred in Louisiana and/or Georgia and not in Mississippi, the proper venue is not in Mississippi. The second motion seeks to dismiss or to consolidate counts 2, 3, 4 & 8 as duplicitous since all of these alleged acts were done for only one application for a loan. The third motion seeks to sever count 11 since it would unduly prejudice Rabhan during his trial since it mentions him by name even though Jimmy Winemiller is the one who allegedly bribed Peer and because a bribe in and of itself is not a false statement within the meaning of § 1014.

Defendant Charles Barrett Merrill has also filed a motion to dismiss count 4 for lack of venue because the alleged actions did not take place in Mississippi but rather in Georgia. That is, the contract and letter discussed in count 4 were drafted in Georgia and sent to Ed Bell in Louisiana who transmitted the letter to Gulf Coast Bank & Trust in New Orleans, Louisiana.

## II. DISCUSSION

**A. Motions to Dismiss for Lack of Venue**

Both Merrill and Rabhan move to dismiss certain counts for lack of venue since, they argue, the alleged actions giving rise to the counts were done in Georgia and/or Louisiana and not in Mississippi.

Article III, Section 2, Clause 3 of the U.S. Constitution provides that "[t]he trial of all crimes ... shall be in the State where the said crimes shall have been committed." The Sixth Amendment to the Constitution provides that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Federal Rule of Criminal Procedure 18 provides that "prosecution shall be had in a district in which the offense was committed."

Conspiracy is a continuing offense which under 18 U.S.C. § 3237 may be tried in any district in which the crime took place. *U.S. v. Davis*, 666 F.3d 195, 199 (5th Cir. 1982). Section 3237(a) provides in pertinent part:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).

It is undisputed that counts 2, 3, and 4 are also continuing offenses against the United States pursuant to § 3237(a) since they were begun in one district and completed in more than one district.

The question at bar, however, is whether venue for counts 2, 3, and 4 is proper in the Northern District of Mississippi when the subject fraudulent statements were made in Georgia and

were sent to Gulf Coast Bank and Trust in Louisiana.

More specifically, with regard to count 2, Rabhan argues that the allegedly forged catfish inventory of Ehrlic Fish Farms, Inc. was done in Georgia and sent to the bank in Louisiana. With regard to count 3, Rabhan avers that the allegedly fraudulent Deed to Secure Debt wherein Rabhan stated he had "good and marketable fee simple title" to property when in fact he had already sold the property was also prepared and signed in Georgia and sent to the bank in Louisiana. As to count 4, Rabhan and Merrill argue that the allegedly forged contract and letter to Ed Bell representing Ehrlich Fish Farms, Inc. owned property they did not were made in Georgia and sent to the bank in Louisiana.

The defendants point to *U.S. v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981) for the proposition that "[t]he proper venue for the offense of making false statements to a federally insured bank may be either where the false statements were prepared, executed, or made, or where the offense was completed upon a receipt of the false information by the bank." These defendants argue that nothing alleged in counts 2, 3, or 4 involve conduct begun, made, or completed in the Northern District of Mississippi and that therefore the only proper venue for these counts is in Louisiana or Georgia. Furthermore, the defendants argue that the Government will not be prejudiced since all of the behavior discussed in counts 2, 3, and 4 is described in the overt acts of the conspiracy.

The Government does not dispute the veracity of the rule discussed in *Zwego*. The Government concedes that "the fraudulent documents were created by the defendant(s) in Georgia, and it is also undisputed that these documents eventually made their way to both New Orleans, Louisiana (GCBT) and the Southern District of Mississippi (USDA)." Gov. Brief at 4-5. The

Government argues, however, that by contract and statute the funds obtained based on the fraudulent documents were to be used only to purchase and operate a catfish pond in the Northern District of Mississippi and thus, the effect of the crimes were felt most strongly in the Mississippi Delta. The Government also concedes that "the issue now before the court appears to be a case of first impression." Gov. Brief at 6.

The Government cites *U.S. v. Pomranz*, 43 F.3d 156 (5th Cir. 1995) in support of their argument that even if a fraudulent statement pursuant to § 1014 is made, received, and completed in districts other than the current forum, as long as the fraudulent statement (as an independent substantive crime constituting a separate count in addition to an overt act in furtherance of the conspiracy charge) substantially affects the current forum, venue is proper. In *Pomranz*, the Fifth Circuit Court of Appeals held that venue was proper for one count of unlawful use of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) in the same district as the several other counts for conspiracy to distribute over 1000 kilograms of marihuana in violation of 21 U.S.C. § 846, unlawful use of a communication facility in violation of 21 U.S.C. § 843(b), interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952, and aiding and abetting the possession with intent to distribute marihuana in violation of 21 U.S.C. § 841(a)(1). In that case, all of the counts occurred in Texas with the exception of the use of a firearm during a drug trafficking offense which occurred in Oklahoma. In his § 2255 motion to reduce his sentence, the petitioner argue that venue was improper for the gun charge in Texas since he had the gun in Oklahoma. The petitioner cited *U.S. v. Davis*, *supra* for the proposition that venue for a conspiracy charge does not dictate the venue for a related charge.

The Fifth Circuit in *Pomranz* concluded that despite *Davis*, venue was proper on the gun

charge in Texas even though it occurred in Oklahoma. *Id*. at 162. However, the Court did so specifically on the grounds that 18 U.S.C. § 924(c)(1) itself establishes a link between the possession of a gun and using it in furtherance of drug trafficking. The Court wrote:

> We agree with appellant that in *Davis*, due to the facts and the *specific crimes* with which the defendants were charged, that venue for the substantive offense had been improper in the Middle District of Georgia. *Davis*, however, is distinguishable from the case before us. Although the cases appear to be similar, the substantive counts in question were based on different statutes and that is where the difference lies. The clear language of § 924 and the Congressional purpose behind it differentiates it from other offenses, including possession with intent to distribute a narcotic.

*Id*. at 161 n. 8.

Thus, this court concludes that the decision in *Pomranz* is narrowly tailored to § 924 gun crimes in connection with drug trafficking and not fraudulent statements made in violation of 18 U.S.C. § 1014.

Having considered the arguments, the court concludes further that venue is improper in the Northern District of Mississippi for counts 2, 3, & 4. It is undisputed that the subject fraudulent statements were made in Georgia and sent to the bank in Louisiana. The Government argues further that the documents were received by the USDA in the Southern District of Mississippi. The subject documents, however, were not prepared, executed, made, or completed in the Northern District of Mississippi. Therefore, counts 2, 3, & 4 should be dismissed for improper venue. This is not to say, however, that the Government is precluded from offering evidence of the behavior in counts 2, 3, & 4 as over acts in furtherance of the conspiracy.

Though this court recognizes that the Government is prejudiced by having to try Merrill and Rabhan in Georgia or Louisiana (or perhaps even in the Southern District of Mississippi) for counts

10

2, 3, and 4, the Supreme Court has indicated that such prejudice is not unfair prejudice. *See U.S. v. Cabrales*, 524 U.S. 1, 9-10 (1998).

**B. Rabhan's Motion to Dismiss Counts 2, 3, 4, & 8 as Duplicitous**

Defendant Rabhan's second motion seeks to dismiss or to consolidate counts 2, 3, 4 & 8 as duplicitous since all of these alleged acts were done for only one application for a loan.

It bears repeating that § 1014 states in pertinent part:

> Whoever knowingly makes **any** false statement or report, or willfully overvalues any land, property or security, **for the purpose of influencing in any way the action** of the ... Rural Development Administration or ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... **upon any application**, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014 (emphasis added).

Thus, the question is whether multiple false statements or willful overvaluations of property can constitute more than one count under § 1014 when all of those false statements or overvaluations of property were made in connection with only one application for a loan guaranteed by the U.S. Government via the Rural Development Administration and a loan made by a bank insured by the FDIC.

However, since the court has already concluded that counts 2, 3, & 4 should be dismissed without prejudice for improper venue, the instant motion is not properly before this court and should therefore be dismissed without prejudice.

**C. Rabhan's Motion to Sever Count 11**

Defendant Rabhan's third motion argues that pursuant to Fed. R. Crim. P. 14, count 11

should be severed from his trial on the ground that it is unduly prejudicial and improper under 18 U.S.C. § 10124 and Fed. R. Crim. P. 8.

Count 11 alleges that Defendant Jimmy WInemiller paid a $50,000 bribe to Defendant Wilbur Peer to ensure that the loan guarantee sought by Defendant Rabhan was approved by the Rural Development Administration. More specifically, count 11 alleges in its entirety:

> On or about February 4, 2001, in the Northern District of Mississippi and elsewhere, JIMMY WINEMILLER, defendant herein, knowingly made material false statements and reports and willfully overvalued land, property, and security, for the purpose of influencing the action of the Rural Development Administration and Gulf Coast Bank and Trust Company, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan. Specifically JIMMY WINEMILLER paid to WILBUR TYRONE PEER a $50,000 bribe to encourage PEER as Associate Administrator at the U.S.D.A., Rural Business Cooperative Services, to approve the $10,000,000 loan guarantee being sought by ERWIN DAVID RABHAN as President of Ehrlich Fish Farms, Inc., RABHAN sought the loan to purchase the 1,560 acre catfish farm owned by Straight Creek Farms, Inc. near Inverness, Mississippi. To conceal the bribe, on February 4, 2001, JIMMY WINEMILLER directed his wife, Becky Winemiller, to write a $155,000 check (#3218) to Mays Byrd & Hicks, P.A., and on February 6, 2001, Mays directed that $50,000 be transferred from Maybeck, Inc. (Mays' company) to Sunrise Flat Development, Inc. (PEER's company); all in violation of 18 U.S.C. § 1014.

Defendant Rabhan argues that the inclusion of this count would be unduly prejudicial if allowed before the jury in his case, especially since he is not alleged to have bribed Peer, but rather Jimmy Winemiller is. In addition, Rabhan maintains that count 11 does not even violate 18 U.S.C. § 1014 because a bribe is not a "false statement" or "willful overvaluation" of property. Since Rabhan is not specifically charges in this count, he does not have standing to move for its dismissal on the basis the count does not violate § 1014. The question remains as to whether the count should be severed from his trial – which by implication would mean that Rabhan would have to have a

12

separate trial from the other defendants, all of whom are currently charged under the same indictment.

Federal Rule of Criminal Procedure 8(a) provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"As a general rule, persons indicted together should be tried together, particularly in conspiracy cases." *U.S. v. Pettigrew*, 77 F.3d 1500, 1517 (5th Cir. 1996). "[P]roper joinder requires that the offenses charged 'must be shown to be part of a single plan or scheme,' and ... '[p]roof of such a common scheme is typically supplied by an overarching conspiracy from which stems each of the substantive counts.'" *Id.* (quoting *U.S. v. Faulkner*, 17 F.3d 745, 758 (5th Cir. 1994)).

The court concludes that it was proper for the Government to include count 11 in the indictment that includes counts against Defendant Rabhan. The next question is whether, despite the propriety under Rule 8(a), count 11 should be severed with regard to Rabhan. Federal Rule of Criminal Procedure 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

"[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt

or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id*.

The substance of count 11 is contained in one of the overt acts of the conspiracy charged in count 1 against all five defendants. More specifically, paragraph 16 of the overt acts section states: "JIMMY WINEMILLER paid to PEER a $50,000 bribe to make certain that PEER approve the loan on the Straight Creek Farms transaction." Furthermore, with regard to Peer, the Objectives of the Conspiracy section of count 1 states in pertinent part:

> To make certain that the federal government would approve the B&I loan, JIMMY WINEMILLER, MICHAEL WINEMILLER and RABHAN enlisted the help of PEER, JIMMY WINEMILLER'S friend and would-be business associate. At the time that this loan was being discussed, PEER was employed with the U.S.D.A. in Washington, D.C. Specifically, PEER'S position was described as the Associate Administrator at the U.S.D.A., Rural Business Cooperative Services. Actually, when PEER approved the loan at issue he was the Acting Administrator. In essence, it was one of PEER'S duties to determine whether government guarantees – such as the one being sought by his friend, JIMMY WINEMILLER – were to be approved or not.

As can be seen in the above language, the Government is alleging that Defendant Rabahan, along with Jimmy and Michael Winemiller, "enlisted the help of Peer" in guaranteeing the subject loan. Therefore, the evidence of a bribe would appear admissible as to Rabhan since he is alleged to have participated in the bribe as discussed in count 1. However, this evidence is admissible as to Rabhan only with regard to the conspiracy charge against him and not count 11 since count 11 does not appear to specifically charge Rabhan with the bribe.

Accordingly, the court concludes that Defendant Rabhan's motion to sever count 11 should be denied.

## III. CONCLUSION

For the reasons discussed above, the court concludes that Defendant Erwin David Rabhan's Motion to Dismiss Counts 2, 3 & 4 for Lack of Venue [38-1] and Defendant Charles Barrett Merrill's Motion to Dismiss Count 4 for Lack of Venue [45-1] should be granted. Therefore, counts 2, 3, and 4 should be dismissed without prejudice as to Defendants Erwin David Rabhan and Charles Barrett Merrill for lack of venue. Defendant Erwin David Rabhan's Motion to Dismiss or in the Alternative Consolidate Multiplicitous Counts [39-1] and Motion to Sever Count 11 [41-1] should be denied. Accordingly, and Order shall issue forthwith,

**THIS DAY** of January 29, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE