IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

UNITED STATES OF AMERICA,

VS.                                                            CRIMINAL ACTION NO. 4:06CR124-P-D

ERWIN DAVID RABHAN, ET AL.,                                                        DEFENDANTS.

## ORDER

These matters come before the court upon Defendant Erwin David Rabhan's motion *in limine* and motions to strike overt act number 16 and to sever Count 11 [155] and Defendants Charles Barrett Merrill, William Tyrone Peer, Jimmy Winemiller, and William Winemiller's joinders therein [156, 181]. After due consideration of the motions and the response filed thereto, the court finds as follows, to-wit:

**1. Motion to Sever Count 11**

The motion to sever Count 11 should be denied as moot since the court dismissed this count for lack of venue on September 3, 2008.

**2. Motion to Strike Overt Act Number 11**

The defendants move to strike overt act number 16 in Count 1, arguing that the act was committed after the completion of the conspiracy charged in Count 1. Overt act number 16 states: "JIMMY WINEMILLER paid to [Wilbur Tyrone] PEER a $50,000 bribe to make certain that PEER approved the loan on the Straight Creek Farms transaction; ... in violation of 18 U.S.C. § 371 and 3293." Count 1 itself charges all of the defendants with conspiring to violate 18 U.S.C. § 1014 by making false statements on a loan application. More specifically, Count 1 states in pertinent part that:

[D]efendants herein, knowingly and willfully conspired with each other and persons

1

known and unknown to the grand jury, to make material false statements and reports and willfully overvalue land, property, and security, for the purpose of influencing the action of the Rural Development Administration and Gulf Coast Bank and Trust Company, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, in violation of 18 U.S.C. § 1014.

The defendants argue that Count 1 does not charge a conspiracy to defraud the bank or the United States, but rather a conspiracy to make false statement on a loan application in violation of § 1014. In other words, Count 1 alleges that the defendants violated 18 U.S.C. § 371 by conspiring to violate § 1014. Thus, the conspiracy ended on November 30, 2000 – the date when the loan was closed and the loan funds were distributed. The alleged bribe, the defendants argue, occurred well after November 30, 2000. The Government concedes in its response that: "Although not stated in Count One of the Indictment, it is apparent that the bribe referenced to Overt Act No. 16 occurred on or about February 4, 2001."

The Government maintains that the conspiracy alleged in Count 1 did not end on November 30, 2000, when the loan was closed, but rather ended when the bribe was paid on February 4, 2001 because "while obtaining the loan may have been the ultimate objective of the conspiracy, the conspiracy entailed several factors, such as the bribing defendant Peer to obtain USDA approval of the loan." Government's Response at 3. The Government cites *U.S. v. Mountour*, 944 F.2d 1019 (2d Cir. 1991) and *Cleaver v. United States*, 238 F.2d 766 (10th Cir. 1956) for the propositions that a conspiracy continues until some affirmative act of the conspirators terminate it and the conspiracy does not necessarily terminate with the completion of the crime, rather when a continuing conspiracy terminates depends on the particular facts and purposes of the conspiracy.

The defendants, however, argue that the Fifth Circuit's decision in *U.S. v. Davis*, 533 F.2d

2

921 (5th Cir. 1976), relying on *Grunewald v. United States*, 353 U.S. 391 (1957), held that a conspiracy to make false statements to a government agency ended with the last false statement made on the bid proposal, and that the acceptance of the contract by the Government and the conspirators' actions after the contract was awarded were not overt acts committed in furtherance of the conspiracy. *Davis*, 533 F.2d at 927-29.

The Fifth Circuit in *Davis* rejected an argument substantially similar to the Government's argument in this case; accordingly, the court will quote the relevant portion of *Davis* at length:

> The government asserts that the ultimate object of the conspiracy was to secure from the Department of Labor the payments under the contract and hence that the conspiracy was not intended by the appellants to cease with the submission of the contract proposal containing the false statements. Thus, under the government's theory overt acts 7 and 9 were acts in furtherance of the conspiracy since it was necessary for the appellants to induce the Department to enter into the contract in order to obtain the payments, and further necessary to coerce B.S.R.L. to withdraw from the contract, thus concealing the existence of the conspiracy and ensuring continuation of the payments under it.
>
> This theory will not withstand analysis, since it misconceives the nature of the offense actually charged. The charge was not a substantive one, that appellants made false statements to a department of the United States or falsified material facts to a department of the United States pursuant to a scheme, in violation of s. 1001. Neither can the indictment be read as charging the appellants with conspiring to defraud the United States in violation of s. 371. ... Instead, the indictment by its lone count charged the appellants with an entirely different offense under s. 371: conspiring to violate s. 1001 by knowingly and willfully making false statements as to material facts of a matter within the jurisdiction of a department of the United States. The sole object of the conspiracy as charged was to make false statements and representations to the Department of Labor, and the only false statements and representations alleged in the indictment as made by the appellants to the Department were made on or prior to August 13, 1969.

The Court in *Davis* went on to conclude that: "The conspiracy charged in this indictment had run its course with the submission of the false statements to the Department on August 13, 1969." *Davis*, 533 F.2d at 928.

3

The Government argues that the decisions in *Davis, Grunewald*, and *Krulewitch v. United States*, 336 U.S. 440 (1949) involved whether certain overt acts in furtherance of conspiracies could prevent the conspiracy charges themselves from being barred by applicable statutes of limitations. The Government maintains that these cases have no bearing on the instant case because the statute of limitations period is not at issue regarding Count 1; rather, the alleged post-application bribe to Wilbur Tyrone Peer in overt act number 16 is evidence of the original conspiracy to obtain a government-subsidized loan even though there is no substantive bribery charge alleged in the Indictment.

The court notes, however, that Count 1 does not allege that the defendants conspired to defraud the government by obtaining a government-subsidized loan under false pretenses, including offering and/or paying a bribe to a federal official. Rather, Count 1 alleges that the defendants conspired to violate § 1014 – *i.e.*, to make false statements on a loan application. Section 1014 provides in pertinent part: "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purposes of influencing in any way the action of ... the Rural Development Administration ... [or] any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, [or] loan ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both."

The plain language of § 1014 does not make it a violation to actually consummate a defrauding of the government. Rather, it is the making of false statements on the application itself that is violative of §1014. The Government does not cite any authority to the contrary.

Accordingly, for an action to constitute an overt act in furtherance of a conspiracy to violate

4

§1014, the action must further the goal of conspiring to make a false statement on a loan application, not necessarily the ultimate goal of obtaining the government-subsidized loan. Thus, in theory, even if there were evidence that one or more of the conspirators bribed, or promised to bribe, a federal official to ensure the conspirators obtained the loan before they filed the application, such a bribery is not an overt act in conspiring to make a false statement for the purpose of influencing a federal agency. In other words, the plain language of §1014 does not make bribery or an offer of a bribe in and of itself a "false statement or report" meant to influence a federal agency. One could make false statements on a loan application and *not* be approved to receive the loan and still violate § 1014. One could also submit a loan application without any false statements on the application, offer to bribe a federal official to obtain the loan, and not violate §1014.

In any event, the defendants' argument pursuant to *Davis* is persuasive. Since the alleged bribery took place after the filing of the fraudulent application, the bribery was not done in furtherance of the conspiracy in Count 1 to violate § 1014 by making false statements on a loan application. As explained above, even if the Government had evidence that Peer was offered the bribe before the defendants allegedly filed a false loan application but was actually paid the bribe after the loan was approved and closed, such evidence would go to a bribery charge, not a charge of making a false statement on a loan application in violation of § 1014.

Accordingly, the defendants motion to strike over act number 16 should be granted.

**3. Motion to Exclude Hearsay Testimony**

The defendants also move to exclude any testimony concerning conversations involving bribery on February 4, 2001 between Jimmy Winemiller, Mays Byrd & Hicks, and Wilbur Tyrone Peer that occurred after November 30, 2000 because these conversations occurred after the

5

conspiracy in Count 1 was complete on or about November 30, 2000 and are therefore inadmissible hearsay. They cite *Krulewitch v. United States*, 336 U.S. 440 (1949) for the proposition that an out-of-court statement made by a co-conspirator is inadmissible if it was made after the conspiracy has ended.

The Government argues that, for the same reasons that overt act number 16 should not be stricken, the conversations were made in furtherance of the conspiracy even if they occurred after the loan closed because they were part of the overall conspiracy. However, as the court concluded above, alleged conversations regarding a bribe – whether taking place before or after the filing of the subject loan application – are not acts in furtherance of a conspiracy to make false statements on a loan application to influence the decision by the Rural Development Administration or a bank to approve the loan.

The Supreme Court in *Krulewitch* concluded: "[The] hearsay declaration, attributed to a co-conspirator, was not made pursuant to and in furtherance of objectives of the conspiracy charged in the indictment, because if made, it was after those objectives either had failed or had been achieved. Under these circumstances, the hearsay declaration attributed to the alleged co-conspirator was not admissible on the theory that it was made in furtherance of the alleged criminal transportation undertaking." 336 U.S. at 442-43; *see also U.S. v Fischetti*, 450 F.2d 34, 41 (5th Cir. 1971) ("The statement, however, becomes inadmissible if it was made after the conspiracy has ended for then it can no longer be said to have been made in furtherance of the conspiracy."). Thus, even if a bribe or an offer to bribe were to be construed as a false statement pursuant to § 1014, the Government has not disputed that the subject conversations occurred on February 4, 2001, well after the loan closed on November 30, 2000. Though the Government argues that the prime objective of the defendants

was to actually receive the loan under false pretenses, the Count 1 of the Indictment only charges the defendants with conspiring to make false statements on the application for the loan. It does not charge the defendants with conspiring to actually obtain the loan under false pretenses.

The conspiracy to make false statements on a loan application charged in Count 1 was complete when the defendants filed the application. Since the subject conversations regarding a bribe to Defendant Peer occurred after the application was filed, the conversations were not made in furtherance of the conspiracy to make false statements on the loan application and are therefore inadmissible hearsay. Thus, the defendants' motion *in limine* should be granted.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Defendant Erwin David Rabhan's motion *in limine* [155] and motions to strike overt act number 16 and to sever Count 11 and Defendants Charles Barrett Merrill, William Tyrone Peer, Jimmy Winemiller, and William Winemiller's joinders therein [156, 181] is **GRANTED IN PART AND DENIED IN PART**; specifically,

(2) Defendants' motion to sever Count 11 is **DENIED AS MOOT**;

(3) Defendants' motion *in limine* to exclude conversations regarding a bribe by co-conspirators on February 4, 2001 is **GRANTED**;

(4) Defendants' motion to strike overt act number 16 from the Indictment is **GRANTED**.

**SO ORDERED** this the 14th day of October, A.D., 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE